UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ACE AMERICAN INSURANCE COMPANY, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Case No. 2:19-cv-5627 |
| | : | |
| v. | : | Chief Judge Algenon L. Marbley |
| | : | |
| GERLING AND ASSOCIATES, INC. *et al.*, | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| Defendants | : | |

## OPINION & ORDER

This matter is before this Court on two motions for summary judgment. The first from Third-Party Defendant EBM-Papst, Inc. ("EBM") (ECF No. 69) and the second from Defendant Gerling and Associates, Inc. ("Gerling") (ECF No. 79). Pursuant to the following analysis, each Motion is **GRANTED in part and DENIED in part**.

## I. BACKGROUND

Plaintiff Ace American Insurance Company ("Ace American") is a Pennsylvania insurance company, and the subrogee of F&F Productions ("F&F") and Hubbard Broadcasting Inc. ("Hubbard"). (ECF No. 1 at ¶ 1). F&F, a subsidiary of Hubbard, works in television broadcast business and contracts with major networks to broadcast events, including college football bowl games. (*Id*., ¶¶ 7, 10). To broadcast these events, F&F utilizes electronically outfitted trailers, or "broadcast trailers." (*Id*., ¶ 7). To ensure the electronic equipment in these trailers remains properly cooled, each trailer is fitted with an HVAC unit. (*Id*., ¶ 9). Defendant Gerling is an Ohio company which manufactures these broadcast trailers and Defendant/Third-Party Plaintiff Northern Air Systems, Inc., ("NAS") manufactures the HVAC units installed therein. (*Id*., ¶¶ 2–3).

1

In 2007, F&F purchased a broadcast trailer from Gerling and designated the trailer internally as GTX15. (ECF No. 85-1 at 7). This trailer was insured by Plaintiff Ace American. (ECF No. 1 at ¶ 8). F&F purchased and installed broadcasting equipment in that trailer and upgraded that equipment in 2017 to enable it to broadcast in 4K ultra high definition. (ECF No. 85-1 at 7). Once the new equipment was installed, F&F redesignated the trailer as GTX18. (*Id*.). In early 2018, F&F contracted with Gerling for a new broadcast trailer to serve as a companion trailer for the GTX18 trailer. (*Id*. at 8). F&F also requested that Gerling remove the existing HVAC unit from the GTX18 trailer and install it on the new trailer; and to install a new HVAC unit on the GTX18 trailer which housed the 4K broadcasting equipment. (*Id*.).

On December 31, 2018, a fire occurred in the HVAC unit shortly after the GTX18 trailer had been used to broadcast the Sun Bowl College Football Game from El Paso, Texas. (ECF No. 1 at ¶ 10). While the exact cause of the fire is disputed, it damaged the trailer, the HVAC unit and the electronic broadcasting equipment. (*Id*.). Pursuant to the terms and conditions of the aforementioned insurance policy, Ace America has paid Hubbard and F&F in excess of $6,000,000 to repair/replace the damaged property, for business interruption, as well as for extra expenses incurred as a result of the fire. (*Id*., ¶ 11). In accordance with the policy's terms, F&F's rights under their insurance policy are subrogated to their provider, Ace American. (*Id*.).

On December 26, 2019, Plaintiff filed suit in this Court against Gerling and NAS alleging negligence, breach of contract and warranty as well as strict products liability. (*See generally* ECF No. 1). Gerling and NAS timely answered the Complaint, and NAS further filed a Third-Party Complaint against Third-Party Defendant EBM-Pabst, Inc. ("EBM"). (ECF Nos. 10, 11). EBM, a Connecticut company that manufactures fan components, manufactured the impeller and inlet ring components for the HVAC unit attached to the GTX18 broadcast trailer. (ECF No. 11 at ¶ 7). NAS

alleges that to the extent the fire was the result of the construction, manufacture, supply and/or sale of the HVAC Unit, any unworkmanlike performance of the unit and ensuing fire was the result of EBM's inlet ring, not NAS's manufacturing. (*Id*.). In the event Plaintiff is entitled to recovery, NAS claims it is entitled to contribution and/or indemnity over and against EBM for any and all such damages awarded. (*See generally id*.). NAS asserts a claim for negligence, breach of contract, breach of warranty and strict products liability. (*Id*.).

EBM timely answered the Third-Party Complaint on April 24, 2022 (ECF No. 14), and the parties progressed with discovery, requiring some intervention by the Magistrate Judge. (*See* ECF Ns. 22). On February 16, 2022, Defendant Gerling moved for summary judgment against Plaintiff (ECF No. 79), and Third-Party Defendant EMB similarly moved against Third-Party Plaintiff/Defendant NAS (ECF No. 69). Each Motion was timely briefed (ECF Nos. 84–87) and is now ripe for review by this Court.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor. *U.S. Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable

3

jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Evidence that is "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

On a motion for summary judgment, the initial burden rests upon the movant to present the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there remains a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (finding that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Self-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Wash. Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013). "The mere existence of a scintilla of evidence to support [the non-moving party's] position [is] insufficient; there must be evidence on which the jury could reasonably find for the[m] . . . ." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

### III. EBM'S MOTION FOR SUMMARY JUDGMENT

### A. Strict Products Liability[1]

---

[1] Along with its argument on this claim, Defendant argues the affirmative defense of assumption of the risk. (ECF No. 69 at 27–30; ECF No. 14 at ¶ 25). NAS responds to this argument, emphasizing that Texas law does not recognize this affirmative defense. (ECF No. 84 at 25–26). In its reply brief, EBM concedes this point, arguing "assumption of

EBM asserts that NAS's strict products liability claim fails because NAS cannot successfully show that the inlet ring was defective when it left EMB's control. (ECF No. 69 at 11). NAS's allegation that the inlet ring was defective because it was plastic rather than metal, says EBM, is untenable because this much was obvious when NAS installed the inlet ring in the HVAC unit. (*Id*. at 13). Given this, EBM argues that any issue of warning is immaterial because it had "no duty to alert a manufacturer of the risks in incorporating an otherwise non-defective product into its product design." (*Id*. at 13 –14 (citing *Temple v. Wean United*, 50 Ohio St.2d 317, 325 (1977))). EMB also asserts that summary judgment is inappropriate pursuant to the component parts doctrine. (*Id*. at 14). As a component parts manufacturer, EBM argues it has no duty no to determine whether its respective component parts would function in a safe fashion. (*Id*. at 16). Moreover, says EBM, it did not substantially participate in the HVAC unit's design; rather NAS had sole responsible for the design of the safety system that was meant to protect the HVAC components in the event of a runaway heating element. (*Id*. at 20).

NAS contends that there are genuine disputes of material fact concerning duty, proximate cause, and whether risk of a plastic inlet ring was open and obvious. (ECF No. 84 at 13). NAS argues that there is a genuine dispute over whether EBM knew how the inlet ring would be used and the possible danger posed by the plastic ring. (*Id*.). Moreover, NAS maintains that EBM knew both that the inlet ring was plastic and the risks associated with using a plastic inlet ring, particularly given the parties' long-term relationship. (*Id*. at 14). Because EBM had this knowledge and then failed to inform NAS that the inlet ring was plastic, and the risks associated therefrom, NAS argues that summary judgment is inappropriate. (*Id*. at 15).

---

the risk is a superfluous doctrine to the court's grant of summary judgment." (ECF No. 86 at 19). As such, and to avoid an unnecessary conflict of law analysis, this Court does not further discuss this argument.

This dispute centers around the fact that NAS allegedly thought it was receiving a metal inlet ring, while EBM thought NAS knew it was receiving a plastic inlet ring. (*Id.*). NAS contends that EBM cannot avoid liability under the component parts doctrine because there exist disputes about whether the inlet ring was defective as well as about EBM's role in the integration of the inlet ring. (*Id.* at 23). Regarding the latter, NAS alleges that EBM "provided the specifications, determined how multiple parts would interact within the final product, drew up the instructions for installation, and had far more information and control over that necessary information." (*Id.* at 24).

Under Ohio's product liability statute, a product may be defective: (1) in manufacture or construction; (2) in design or formulation; (3) due to inadequate warning or instruction; or (4) because the product does not conform to the manufacturer's representations. R.C. §§ 2307.74–77. Because NAS asserts a claim under each theory (ECF No. 11 at ¶¶ 20, 22, 27, 30), this Court must first determine whether the inlet ring was defective under each theory before EBM can find shelter under the component parts doctrine. *Romans*, 2013 WL 6094299, at *6 (a component part manufacturer "is not liable for a defect in a completed product unless . . . the component itself is defective").

### 1. Manufacturing or Construction Defect

Under R.C. 2307.74, a product is defective in manufacture or construction if, "when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer." NAS alleges the inlet ring was defective in manufacture because it was manufactured with the wrong melting point. (ECF No. 84 at 19). The evidence of record, however, does not support a finding that the plastic inlet ring was defective in manufacture or construction. There is no evidence that the plastic inlet ring "deviated in a material way from the design specifications, formula, or performance standards of the

6

manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards." R.C. § 2307.74. Regarding the ring's melting point, NAS's argument is misplaced. The plastic inlet ring was manufactured in compliance with industry standards and in the manner that identical units were manufactured by EBM. (*See* ECF No. 60 at 139 (NAS's expert testifying that the plastic inlet ring can be used in some applications but is unsuitable for others); *see also* ECF No. 69 at 12 (citing NAS's expert report, wherein he represents that the plastic inlet ring, is not a "suitable replacement for the metal ring")).

NAS's issue is straight forward—the plastic inlet ring was unsuitable for the HVAC unit, and had EBM sent them a metal inlet ring, any damages alleged by Plaintiff could have been avoided. There is little dispute on this point. That, however, does not create a manufacturing defect. Because it has the burden of proving the existence of a defect (*Bonacker v. H.J. Heinz Co.*, 676 N.E.2d 940, 942 (Ohio Ct.App.1996)), NAS must offer some evidence of EMB's "design specifications, formula, or performance standards" and any failure of EMB to meet them. *White v. DePuy, Inc.*, 718 N.E.2d 450, 456 (Ohio Ct.App.1998). In communicating with EBM salesperson Kim Case prior to purchasing the inlet ring, NAS's director of engineering Will Rausch did not view or receive any design specifications, as they were not attached to the email he received. (ECF No. 77 at 32). "[W]ithout evidence of what the design specifications were, the jury would be reduced to speculation in determining if [EBM] had not conformed to the specifications." *Smitley v. Nissan N. Am., Inc.*, No. 2:09-CV-148, 2010 WL 3027915, *4 (S.D. Ohio Aug. 2, 2010). While the fact that Mr. Rausch did not receive the specifications perhaps implicates NAS's failure to warn and failure to conform claims, it proves determinative of NAS's manufacturing defect claims.

Accordingly, EBM's motion for summary judgment on NAS's Strict Products Liability Manufacturing Defect claim is **GRANTED**.

## 2. Design or Formulation Defect

To establish a design defect claim, a plaintiff must prove that the product had a design defect, this defect existed when the product left the manufacturer's control, and the defect proximately caused the injury for which recovery is sought. *Miller v. Uniroyal Technology Corp.*, 35 Fed. Appx. 216, 222 (6th Cir.2002) (citing O.R.C. § 2307.75(A)). "A product is defective in design if (1) the foreseeable risks of the design exceed the benefits, or (2) the product is more dangerous than an ordinary consumer would expect when used in a reasonably foreseeable way." Under the former, the statute sets forth a non-exhaustive list of risk and benefit factors, to be weighed in making the determination as to such a claim. *See* Ohio Rev. Code § 2307.75(B)–(C). A Court should only grant summary judgment where a "product is used in a capacity which is clearly unforeseeable by the manufacturer and completely incompatible with the product's design." *Welch Sand & Gravel, Inc. v. O & K Trojan, Inc.*, 668 N.E.2d 529, 533–34 (1995) (citing *Cox v. Oliver Mach. Co*. 534 N.E.2d 855 (1987)). Questions on the "[f]oreseeable uses of a product, foreseeable risks associated with a product, benefits associated with a product, and consumer expectations regarding a product's uses and risks" are generally all factual, and as such, "summary judgment will rarely be granted in design-defect cases when any of these elements is disputed." *Id*.

Here, NAS claims that EBM defectively designed the inlet ring *and* fan, not simply the ring. (ECF No. 84 at 22) (emphasis added). NAS asserts that this design needlessly increased the foreseeable risk of fire and there was an easy design solution: combining a metal inlet ring with the fan. (*Id*.). Moreover, NAS maintains that this risk was foreseeable because EBM solely designed the plastic inlet ring and fan combination. (*Id*.).

NAS's argument has merit. Upon review of the record, this Court finds that there exist genuine issues of material fact as to both the foreseeable risks associated with a plastic inlet ring fan combination as well as to consumer expectations regarding this product's use. The parties agree that the plastic inlet ring was not appropriate for this fan configuration, their dispute is over at who's feet the blame should fall for incorporating this part into the NAS HVAC unit. Given the parties' long standing business relationship and the general understanding that a plastic inlet ring is unsuitable in some circumstances, there exists a genuine issue of material fact as to whether EBM, "using the attention, perception, memory, knowledge and intelligence of a reasonable manufacturer, should have anticipated the general danger posed" by supplying NAS with a plastic inlet ring. *Aldridge v. Reckart Equip. Co.*, 2006-Ohio-4964, ¶ 51. EBM's claim that the plastic inlet ring "conforms with all expected standards.[,]" is not determinative as compliance with industry standards "is not conclusive to defeat a design-defect claim." *Welch Sand & Gravel, Inc.*, 668 N.E.2d at 534 (citing *Kelley v. Cairns & Bros.*, 626 N.E.2d 986 (1993)). Lastly, NAS has sufficiently shown the "availability of a technically feasible alternative," namely, a metal inlet ring. *See Aldridge*, 2006-Ohio-4964 at ¶ 50 (recognizing that to defeat summary judgment on a defective design claim, plaintiff must present evidence of a "technically feasible alternative design").

Ultimately, this is a dispute over what EBM knew (and shown have known) and when it knew it. While a jury may ultimately find that EBM's knowledge did not raise to a culpable level, NAS has shown sufficient factual dispute for the question to be presented thereto. *See Welch Sand & Gravel, Inc.*, 668 N.E.2d at 533 (recognizing that summary judgement is "rarely granted" in design defect cases). As such, EBM's motion for summary judgment on NAS's Strict Products Liability Design Defect claim is **DENIED**.

9

### 3. Failure to Warn & to Conform to Representation

To prevail on a failure to warn claim under Ohio law, a plaintiff must prove three elements: (1) a duty to warn against reasonably foreseeable risks; (2) breach of this duty; and (3) an injury that is proximately caused by the breach. *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 514 (6th Cir. 2003). In the case of a component manufacturer, such as EBM, a duty to warn arises when the "manufacturer has knowledge of a specific use of the component and a possible danger from such use." *Romans v. Tex. Instruments, Inc.*, No. CA2013-04-012, 2013 WL 6094299, at *10 (Ohio Ct. App. Nov. 18, 2013). Similarly, to prevail on its claim that the inlet ring was defective because it failed to conform to EBM's representations, NAS must prove: (1) EBM made a representation as to a material fact concerning the character or quality of the inlet ring; (2) that the inlet ring failed to conform to EBM's representation; (3) justifiable reliance on EBM's representation; and (4) that such reliance directly and proximately caused the alleged injuries. *Westfield Ins. Co. v. HULS Am., Inc.*, 128 Ohio App.3d 270, 295 (1998). This Court's previous findings prove determinative here.

This Court previously held that there exists a genuine dispute of material fact as to whether EBM should have anticipated the general danger posed by supplying NAS with a plastic inlet ring. Given this dispute, there similarly exists a genuine issue of material fact on whether EBM "knew or . . . should have known about a risk that is associated with the [inlet ring]." Ohio Rev. Code Ann. § 2307.76 (West 1994). And, because there is no evidence that EBM provided any warning to NAS regarding the composition of the inlet ring, summary judgment on NAS's failure to warn strict liability claim would be improper. EBM's argument that there can be no requirement to warn here because the risk was "open and obvious," does not change this outcome. While the statute contemplates such circumstance, this Court does not find the risk associated with a plastic inlet

ring are so "open and obvious," particularly because NAS had received plastic rings in the past and there are configurations where such a ring is appropriate.

Similarly, EBM cannot be awarded summary judgment on NAS's claim that the inlet ring was defective because it failed to conform to EBM's representations. As detailed further below, EBM's contract with NAS certifies that the inlet ring was defect free. (ECF No. 69 at 37). Should a jury find that the plastic inlet ring was defective in design or in failure to warn, then it necessarily failed to conform to EBM's representation that the ring was defect free. Because this Court has found genuine issues of material fact as to the existence of a defect in the inlet ring, EBM similarly cannot be granted summary judgment on this claim.

A brief note on the component parts doctrine. Under the doctrine, "a manufacturer of a component part is not liable for a defect in a completed product unless: (1) the component itself is defective or dangerous, or (2) the component manufacturer constructs or assembles the completed product or substantially participated in the design of the final completed product." *Romans v. Tex. Instruments, Inc.*, No. CA2013-04-012, 2013 WL 6094299, at *6 (Ohio Ct. App. Nov. 18, 2013). EBM asserts that the doctrine shields it from liability as the inlet ring was not defective or dangerous and it did not substantially participate in the HVAC unit's construction. (ECF No. 69 at 14). Without evaluating the latter, this Court previous findings illustrate that there exist genuine issues of material fact as to whether the plastic inlet ring was defective. As such, EBM cannot find protection under the doctrine. *Martinez v. Yoho's Fast Food Equipment*, 2002–Ohio–6756, ¶ 33–35 (recognizing that the doctrine protects components that are not "in and of [themselves] dangerous or defective').

EBM's motion for summary judgment on NAS's Strict Products Liability Failure to Warn and Failure to Conform to Representation claim is **DENIED**.

11

**B. Breach of Contract**

EBM argues that NAS's breach of contract claim is barred by the damage limitation in the contract between the two, and regardless, no issues of material fact remain regarding the inlet ring. (ECF No. 69 at 21). To the first argument, EBM first highlights that NAS did not attach a contract in its Complaint so the allegation that EBM breached its contractual duties fails to state a claim upon which relief can be granted. (*Id*.). EBM argues that pursuant to this contract, in the event of a product failure, it is only liable for the cost of the component itself. (*Id*. at 23). Even without this limitation, EBM asserts NAS cannot show any contract terms that require EBM to take any action beyond supplying a new component capable of funneling air; as it did. (*Id*.).

NAS makes three arguments in support of its breach of contract claim. First, NAS argues that there is a dispute over what contract applies. (ECF No. 84 at 28). To this point, NAS asserts that the contract identified by EBM, and attached to its Motion for Summary Judgment, is both illegible and contains only one-page of a multi-page document. (*Id*.). Moreover, NAS maintains that the allegedly defective part falls under an earlier contract between the parties because it was manufactured before that contract was executed. (*Id*.). Second, NAS asserts that there is a genuine dispute whether EBM breached the agreement by providing a defective inlet ring. (*Id*. at 29). NAS highlights that the contract, as alleged by EBM, explicitly guarantees a product free from defects. (*Id*.). Third, NAS asserts that there is a dispute over the remedy and whether the inlet ring was defective. (*Id*. at 29–30). NAS maintains that because the inlet ring failed its essential purpose—as it was plastic, not metal—and this defect was not latent, there exists a dispute as to whether NAS should receive consequential damages under contract law. (*Id*. at 31).

In its Complaint, NAS represents that it "had contracts (including but not limited to oral and/or implied contracts) with EBM to provide component parts including fans used in the HVAC

unit sold and assembled by [NAS]." (ECF No. 11 at ¶ 11). While EBM claims that because Plaintiff never produced a contract so the claim should be dismissed, it also introduces a contract, which it claims governs the sale of the inlet ring. (ECF No. 69 at 21). As NAS notes, however, this alleged contract is merely a blurry page, with no signatures and half the page illegible. (*Id*. at 37). NAS acknowledges this alleged contract and asserts that the sale the inlet ring was subject to an earlier contract but fails to attach or even cite to that alleged contract. (ECF No. 84 at 28). As such, while no party disputes that the sale of the inlet ring was subject to some contract, the terms of that contract are absent from the record. And it is not this Court's responsibility to "*sua sponte* comb the record" to find this alleged contract. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 410 (6th Cir. 1992).

"[A] breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party perform[s] its contractual obligations; the other party fail[s] to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffer[s] damages." *Garofalo v. Chicago Title Ins. Co*. 661 N.E.2d 218, 226 (1995). As previously detailed, there is no dispute that the parties had some contract for the sale of the inlet ring. Whatever its form, that contract contemplated the exchange of the inlet ring for some cash consideration. Moreover, this Court has found that Defendant made some material representations on the suitability of the inlet ring and that there exists genuine issues of material fact over whether the inlet ring conformed to those representations. Given this, coupled with the parties' failure properly to develop the record, this Court finds there remains a genuine issue of material fact on Plaintiff's breach of contract claim. *Thyssen Krupp Elevator Corp. v. Constr. Plus, Inc.*, 2010-Ohio-1649, ¶ 22 (finding genuine issues of material fact existed on plaintiff's breach of contract claim, where the record did not contain "a [] description of the terms and conditions" of the alleged

contract); *Thomasville Furniture Indus., Inc. v. JGR, Inc.*, 3 F. App'x 467, 474 (6th Cir. 2001) (recognizing that only "where there is a clear and unambiguous contract [is] there [] no question of fact to be determined"). Accordingly, EBM's motion for summary judgment on NAS's Breach of Contract claim is **DENIED**.

### C. Negligence & Breach of Express/Implied Warranties

EBM argues that NAS's negligence claim is subject to summary judgment because EBM's product was not defective in and of itself, and nonetheless, the claim is preempted by the Ohio Products Liability Act ("OPLA"). (ECF No. 69 at 24). To the first point, EBM asserts that numerous experts agree that the origin and cause of the fire had nothing to do with the EBM inlet ring. (*Id*.). Moreover, says EBM, the inlet ring was not defective, and EBM could not be found negligent for NAS's integration of the ring into the HVAC unit "where it was never requested to analyze the design and was not provided any drawings with which to do so." (*Id*.). Similarly, EBM asserts that it is entitled to summary judgment on NAS's breach of express and implied warranty claims because any such warranties were disclaimed, NAS has produced no evidence the inlet ring was defective and, regardless, these claims are preempted by the OPLA. (ECF No. 69 at 25).

NAS argues that genuine issues of material fact exist regarding the cause and origin of the fire, as well as the suitability of the inlet ring. (ECF No. 84 at 31). Regarding abrogation under the OPLA specifically, NAS asserts that under Ohio law "[e]conomic claims separate from the product liability-related claims may go forward in parallel in tort." (*Id*. (citing *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's, Ents.*, 2015-Ohio-4884, ¶¶ 24–33). Because its negligence and breach of warranty claims seek economic damages separate and distinct from its product liability claims, NAS asserts that its claims are not abrogated, and summary judgment is inappropriate. (*Id*.).

14

Ohio product liability law was consolidated under the OPLA and applies to "[a]ny recovery of compensatory [or punitive] damages based on a product liability claim" O.R.C. §§ 2307.72(A),(B). The OPLA defines a product liability claim as one:

> "that is asserted in a civil action ... and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question that allegedly arose from any of the following:
>
> (a)  The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;
>
> (b)  Any warning or instruction, or lack of warning or instruction, associated with that product;
>
> (c)  Any failure of that product to conform to any relevant representation or warranty.

O.R.C. § 2307.71(M).

Effective April 7, 2005, the OPLA eliminated common law product liability causes of action, including strict products liability, negligent failure to warn, breach of express warranty, and breach of implied warranty. *See Stratford v. SmithKline Beecham Corp.*, No. 2:07–CV–639 2008 WL 2491965, *5 (S.D. Ohio June 17, 2008) (internal citations omitted) ("The OPLA has preempted the implied warranty of merchantability and the implied warranty of fitness for a particular purpose."). Courts in this jurisdiction have also found that common law negligence actions are also preempted by the OPLA where "[t]he actionable conduct that forms the basis of the negligence claim . . . is the same conduct that the OPLA defines as giving rise to a 'products liability claim.'" *Id.* ("Plaintiffs are dressing up an OPLA claim as a negligence claim, which really amounts to a 'common law products liability claim.'").

There is, however, an exception to this preemption. "[R]ecovery of compensatory damages for economic loss based on a claim that is asserted in a civil action, other than a product liability

claim, is not subject to [the OPLA] and may occur under the common law of this state or other applicable sections of the Revised Code." Ohio Rev. Code 2307.72(C); *see also Hoffer v. Cooper Wiring Devices, Inc.*, No. 1:06–CV–763, 2007 WL 1725317 *2 (N.D. Ohio June 13, 2007) ("[T]o the extent Plaintiff seeks damages for economic loss, his claims do not fall under the purview of the OPLA."). The Ohio Revised Code defines "[e]conomic loss" as "direct, incidental or consequential pecuniary loss, including, but not limited to, damage to the product in question, and nonphysical damage to property other than that product[.]" Ohio Rev. Code § 2307.71(B).

NAS's Third-Party Complaint is widely pled. And, as EBM did not move to dismiss, the Complaint was never scrutinized under the umbrella of Rule 12(b). As such, there are numerous live claims that fail as a matter of law. First, NAS's claims for Breach of Express Warranty and Breach of Implied Warranty are both common law product liability causes of action abrogated by the OPLA. *See McFarland v. Ethicon, Inc.*, No. 2:20-CV-02188, 2020 WL 4464401, at *2 (S.D. Ohio Aug. 4, 2020). Second, because the actionable conduct in NAS's negligence claim is the same conduct the OPLA defines as giving rise to a products liability claim, that claim too is abrogated. *Id.* (dismissing plaintiff's claims for "negligence," "gross negligence" and "negligent infliction of emotional distress," as abrogated by the OPLA.). Moreover, NAS cannot find shelter under the aforementioned exception because it seeks recovery of compensatory damages for economic loss based on a product liability claim. *See* Ohio Rev. Code 2307.72(C).

Accordingly, EBM's motion for summary judgment on NAS's Breach of Express Warranty, Breach of Implied Warranty and Negligence claims is **GRANTED**.

## IV. GERLING'S MOTION FOR SUMMARY JUDGMENT

Ace American asserts four causes of action against Gerling: Two Counts for Negligence, Breach of Contract and Breach of Warranty. (ECF No. 1). Gerling seeks summary judgment on

16

each of these claims, arguing that there are no genuine issues as to any material fact upon which reasonable minds could differ as to the claims against it. (*See generally* ECF No. 79).

### A. Negligence

Gerling makes two arguments on why it is entitled to summary judgment on both of Plaintiff's negligence claims. (ECF No. 79 at 21–25). First, Gerling argues that Plaintiff's negligence claim is barred under Ohio law, as the parties' relationship is governed by contract. (*Id*. at 21 (citing *Thornton v. Cangialosi*, No. 2:09-CV-585, 2010 U.S. Dist. LEXIS 51818, 2010 WL 2162905, at *2 (S.D. Ohio May 26, 2010)). Gerling asserts that because it had a contract with F&F pursuant to which Gerling installed the new HVAC unit in the 2007 trailer and removed the existing HVAC unit for installation on the new 2018 trailer. (*Id*.). Because contract law provides Plaintiff's the remedies they seek, Gerling maintains that its negligence claims cannot proceed. (*Id*. at 22). Secondly, assuming these negligence claims survive, Gerling argues they nonetheless fail because it owed F&F no duty, let alone a duty to warn of all potential hazards associated with a failure of the HVAC unit or F&F's failure to preform preventative maintenance. (*Id*. at 22–25). No such duty existed, argues Gerling, because it did not know, nor could it have known, about any inherent dangers of the HVAC unit related to use of the plastic inlet ring and/or the failure of the HVAC unit's internal mechanism to avoid overheating. (*Id*. at 22–23). Even if this duty existed, Gerling maintains that it properly warned of the need for routine maintenance in the Gerling Manual, which was given to F&F. (*Id*. at 25–26).

Plaintiff asserts that summary judgment on its negligence claims is inappropriate because the alleged duty to warn exists independent of the contract. (ECF No. 85-1 at 17). Plaintiff maintains that the only obligations created by contract were for F&F to pay for the cost of the HVAC unit and its installation, and for Gerling to supply and install that HVAC unit. (*Id*. at 18).

Plaintiff argues that the duty alleged, to warn about the need to inspect and tighten internal electrical connections inside the HVAC unit, exists independent of the contract and arose out of the parties' relationship. (*Id*. at 18–19).

"Under Ohio law, the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir.), *cert. denied*, 454 U.S. 1053 (1981). "[A] tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed." *Id*.; *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir.1976) ("A tort exists only if a party breaches a duty . . . which would exist even if no contract existed."). This "independent duty," is one "imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation." *Battista*, 538 F.2d at 117.

Plaintiff alleges that Gerling had two independent, non-contractual duties: to warn F&F about the need to inspect and tighten internal electrical connections inside the HVAC unit to avoid fires; and to inspect the electrical connections and components inside the HVAC unit when it started up and commissioned the unit. (ECF No. 85-1 at 18). This claim, however, fails for two reasons. First, as this Court details further below, the parties' contract is wider in scope than Plaintiff contends. Given that the parties contract includes several representations on the fitness and suitability of the broadcast trailer, the alleged duties raised by Plaintiff arise thereto, and are not independent. Second, this Court does not find any precedent supporting the imposition of an independent duty to warn or inspect, outside of the successor/predecessor context. *Holland v. FCA US LLC*, No. 1:15 CV 121, 2015 WL 7196197, * 3–4 (N.D. Ohio Nov. 16, 2015) ("In these circumstances, the law imposes a duty to warn because the successor has entered into a relationship with the customer and derives an actual or potential economic benefit.").

Accordingly, given the existence and scope of the parties' contract, Gerling's motion for summary judgment on Plaintiff's negligence claims is **GRANTED**.[2]

### B. Breach of Contract & Warranty

Gerling argues it did not breach its duty to purchase and install the HVAC unit onto the 2007 trailer as contracted. (ECF No. 79 at 26–28). Gerling maintains that its Resolution Specialist, Brandon Robinson, properly installed the HVAC installation, including checking the pre-assembled and tightened contactors to the unit. (*Id*. at 26). Even had Mr. Robinson failed to tighten the pre-assembled connectors, Gerling argues that there is no evidence that these connectors were loose in the first place. (*Id*. at 27). Additionally, Gerling argues that Plaintiff cannot meet the burden to show it breached its standard limited warranty or an implied warranty. (ECF No. 79 at 28). It maintains that it provided F&F with an express warranty, the Gerling Standard Limited Warranty, which explicitly states that Gerling will assume responsibility for arranging the repair/replacement of the HVAC unit, and elements thereof. (*Id*. at 29). Gerling asserts that there is no evidence that it failed to perform any service repair requests to the HVAC Unit, nor that F&F relied on any statements from Gerling about the abilities or merchantability of the HVAC unit. (*Id*. at 30). Moreover, given the existence of this warranty, Gerling argues Plaintiff's claims for damages should be limited to the remedies enumerated within the warranty's provisions and the contract between F&F and Gerling. (*Id*. at 31).

Plaintiff asserts summary judgment on these claims is inappropriate, highlighting numerous alleged genuine issues of material fact. (ECF No. 85-1 at 10–14). Plaintiff alleges that Gerling breached the parties' contract in numerous material respects by: failing to perform its work and services in a workmanlike manner; failing to inspect, detect and/or correct defects in the

---

[2] Given this disposition, this Court does not evaluate the parties' arguments on the economic loss doctrine barring Plaintiff's negligence claims.

HVAC unit and its electrical connections; improperly supplying, assembling, installing and connecting the HVAC unit; failing to hire competent employees, agents, suppliers and/or subcontractors; failing properly to and safely to complete the work and services it was hired to perform; failing properly to and adequately to supervise and inspect the work performed by its agents and subcontractors; and otherwise failing to use due care under the circumstances. (ECF No. 1 at ¶¶ 19(a)–(g)). Regarding its breach of warranty claims, Plaintiff disputes that F&F ever received the NAS manuals, NAS limited warranty documents, or the Gerling limited warranty documents, when it took control of the trailer. (ECF No. 85 at 2). According to Plaintiff, F&F President, Marc Orgera testified that he never received any such documents when he signed the contract or when he picked up the trailer from Gerling. (*Id*. at 11). Moreover, Plaintiff argues that the contract's statement that it includes "Gerling & Associates Inc. Full-Service Warranty" and "[a]ll manufacturers' warranties," cannot be binding because neither was attached and there is no reference in the contract to any limitation of liability. (*Id*. at 11). Because F&F was not able to assent to the applicability of these terms, Plaintiff argues they do not apply. (*Id*. at 13).

As Plaintiff highlights, the parties' dispute centers around what documents and what terms and conditions, if any, apply to Gerling's supply and installation of the NAS HVAC unit. (ECF No. 85-1 at 10). Gerling and Plaintiff dispute whether Gerling's limited warranty was incorporated into the contract, where the contract stated "[t]his proposal includes . . . Gerling & Associates Inc. Full Service Warranty[,]" but the warranty itself was not provided to F&F at the time of signing. (ECF No. 79-1 at 21). The application of this warranty, and the corresponding scope of the parties' contract, proves pivotal to the resolution of these claims.

"Ohio [] law includes the doctrine of incorporation by reference." *Volovetz v. Tremco Barrier Solutions*, 74 N.E.3d 743, 751 (Ohio Ct. App. 2016); *see Mohmed v. Certified Oil Corp.*,

20

37 N.E.3d 814, 821–22 (Ohio Ct. App. 2015). Pursuant to that doctrine, "when a document is incorporated into a contract by reference, that document becomes part of the contract." *Volovetz*, 74 N.E.3d at 751. To incorporate a document, the contract "'must explicitly, or at least precisely, identify the written material [being] incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract.'" *Id*. (quoting *Northrop Grumman Information Technology, Inc. v. United States*, 535 F.3d 1339, 1345 (Fed.Cir.2008)). Presented with this issue, albeit in different context, the Sixth Circuit noted that "[f]or the terms of another document to be incorporated by reference[,] . . . the reference must be clear and unequivocal[] and must be called to the attention of the other party, he must consent thereto, and the terms of the incorporated document must be known or easily available . . . ." *Rinard v. Eastern Co.*, 978 F.2d 265, 268 n. 3 (6th Cir.1992) (citing 17A C.J.S. Contracts, § 299). Whether a document has been incorporated by reference is a question of law. *Id*. (citing 11 Lord, *Williston on Contracts*, Section 30:25, at 294–301 (4th Ed.2012)).

On March 2, 2018, F&F and Gerling contracted for, among other things, the supply and installation of a new HVAC unit on the GTX18 trailer which housed the 4K broadcasting equipment. (ECF No. 79-1 at 17, 20). This is the final page of that contract:

**DELIVERY:**
If order is confirmed by COB today, Friday March 2nd with opening deposit, the delivery date will be for July 2, 2018.

This proposal includes:
All Systems Schematics
Gerling & Associates Inc. Full Service Warranty
All manufacturers' warranties

Proposed by:_____/____2018
        Fred Gerling
        Gerling & Associates, Inc.

Accepted by:_____13/2/2018

This Confidential Quotation is effective for 60 days.

(*Id*. at 21).

Upon review of this language, along with the other undisputed facts in the record, this Court finds that the referred to documents were sufficiently incorporated into the parties' contract by reference. First, the documents, including Gerling's Limited Warranty, were "explicitly identified," rather than merely alluded to. *Volovetz*, 74 N.E.3d at 751. Second, the statement "[t]his proposal includes," clearly communicates "that the purpose of the reference is to incorporate the referenced material into the contract." *Id*. Moreover, not only was this incorporation clause called to F&F's attention, in bold lettering directly above the signature line and below pricing information, F&F consented to it by signing the "Accepted by" line. *See Bennett v. KeyBank, N.A.*, 2020-Ohio-1152, ¶ 26 (holding that a plaintiff's signature constituted acknowledgment that he would be bounds by a contract's incorporated terms and conditions). Whether Marc Orgera actually reviewed Gerling's Limited Warranty "is irrelevant, because the incorporation was clearly stated within the document [Mr. Orgera] voluntarily executed." *Id*.; *see Preferred Capital, Inc. v. Power Engineering Group, Inc.*, 112 Ohio St.3d 429, ¶ 10 (recognizing Ohio's "long-held principle that parties to contracts are presumed to have read understood them and that a signatory is bound by a contract that he or she willingly signed"). Finally, this Court does not find that the terms of Gerling's Limited Warranty were not "known or easily available" to F&F. *Rinard*, 978 F.2d at 268 n. 3. Considering its long-existing business relationship with Gerling, beginning at least in 2005 (ECF No. 75 at 6), as well as its experiencing in contracting, having been in business since the early 1980's (ECF No. 73 at 4), this Court does not find that the terms of Gerling's Limited Warranty were not "known or easily available" to F&F. F&F had previously purchased ten (10) broadcast trailers from Gerling, each outfitted with an HVAC unit, and subject

to Gerling's Limited Warranty. (ECF No. 73 at 6). Plaintiff cannot now come before this Court and feign ignorance, particularly when F&F's President signed a contract which explicitly incorporated Gerling's Limited Warranty.

* * *

Considering the scope of the parties' contract as well as the language in Gerling's Limited Warranty, this Court finds that there exist genuine issues of material fact as to whether Gerling breached both its contract with Plaintiff as well as its warranty. As previously detailed, there exists genuine issues of material fact as to whether the HVAC unit was defective. (*See supra* at Part III). To the extent Gerling knew, or should have known, of that defect, and failed adequately to warn Plaintiff, that would constitute a breach. And, while the limitations within Gerling's Warranty may limit Plaintiff's recovery, they do not limit Plaintiff's ability to allege breach. The record demonstrates sufficient evidence to submit this question to a jury.

Moreover, when there is a dispute as to whether the parties' respective actions are sufficient to satisfy the terms of the contract or warranty, a question of fact is presented. *LublinSussman Grp. LLP v. Lee*, 107 N.E.3d 724, 730 (2018); *Uhler v. Ocwen Fed. Bank*, No. 1:08-CV-457-HJW, 2011 WL 2489765, *4 (S.D. Ohio June 21, 2011) ("Given the genuine disputes of material fact raised by the parties as to whether their respective obligation were met, summary judgment is not appropriate."). Because the parties dispute on this claim hinges on what Gerling knew and when, summary judgment is inappropriate on plaintiff's breach of contract and express warranty claim.

Accordingly, Gerling's motion for summary judgment on Plaintiff's Breach of Contract and of Express Warranty claims is **DENIED**. Gerling is, however, **GRANTED** summary judgment on Plaintiff's breach of implied warranty claim, as such warranty was properly disclaimed and there has been no claim of unconscionability. *JBlanco Enters. v. Soprema Roofing*

*& Waterproofing, Inc.*, No. 1:13-cv-2831, 2016 U.S. Dist. LEXIS 155045 (N.D. Ohio Nov. 8, 2016) ("[C]ontracting parties in Ohio are free to agree to exclude or limit warranties if the exclusion or modification satisfies the requirements of Ohio Rev. Code § 1302.29(B).").

## V. CONCLUSION

Given the foregoing conclusions, EBM's Motion for Summary Judgment (ECF No. 69) and Gerling's Motions for Summary Judgment (ECF No. 79) are **GRANTED in part and DENIED in part**.

**IT IS SO ORDERED.**


_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**


**DATED: September 26, 2022**